**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN DURAND, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br>v.<br><br>7SECURE LLC, and HUKM MYLES MOORE,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff JOHN DURAND ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants 7SECURE LLC and HUKM MYLES MOORE ("Defendants"), and state as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), New Jersey Wage Payment Law ("NJWPL"), the New Jersey Wage and Hour Law ("NJWHL"), Texas Labor Code ("TLC"), he and others similarly situated are entitled to recover from Defendants: (1)

unpaid wages, including unpaid overtime, due to time-shaving, (2) unreimbursed uniform maintenance costs, (3) statutory penalties, (4) liquidated damages, and (5) attorneys' fees and costs.

3. Plaintiff additionally alleges that Defendants unlawfully retaliated against him, in violation of the FLSA and NJWPL, shortly after Plaintiff made a lawful complaint concerning his supervisor's ongoing failure to respond to complaints about unpaid hours reflected in his paychecks and seeks to recover from Defendants: (1) economic damages, (2) punitive damages, and (3) attorneys' fees and costs.

4. Defendants operate a security and private investigation company which provides services throughout New York, New Jersey, and Texas.

5. Plaintiff, FLSA Collective Members, and Class Members are current and former security guards and other similarly positioned employees of Defendants and were victims of Defendants' schemes to underpay employees. Specifically, despite requiring employees to work hours beyond their shift and during meal breaks each day, Defendants would only compensate employees based on their schedules. Defendants' system resulted in both pre-and-post shift time-shaving.

6. Plaintiff brings this wage and hour class action on behalf of himself and all persons, who during the applicable limitations period up to and including the present, were similarly underpaid by Defendants in violation of protections afforded under the FLSA, and the laws and regulations passed in the following states:

1) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.;*
2) New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq,;* and the New Jersey Wage and Hour Law, N.J.A.C. §§ 12:56-2.1 *et seq,;* and
3) Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq.*

(Collectively, the "Relevant State Wage and Hour Laws", or "RSWHL")

7. Plaintiff, FLSA Collective Plaintiffs, and Class Members were all victims of Defendants' failure to pay wages, including overtime wages. Defendants instituted a nationwide policy of not compensating wages for all hours worked, including (i) not tracking actual hours worked, and (ii) compensating employees based on a fixed schedule, regardless of whether employees worked longer than their scheduled shifts.

8. Plaintiff brings this wage and hour class action on behalf of himself, and all Class Members employed by Defendants nationwide, who during the applicable state and federal limitations period (the "Class Period"), were similarly underpaid by Defendants in violation of protections afforded under the FLSA and the regulations of the above states.

9. To the extent that gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws), or claims seeking damages for failure to pay for all hours of work, are not covered by the protection of a RSWHL, Plaintiff further alleges that he and others similarly situated are entitled to recover from Defendants the following pursuant to breach of contract and unjust enrichment: (1) wrongfully withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. Personal jurisdiction is proper as Corporate Defendant 7SECURE LLC is registered in the State of New York.

12. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 as Corporate

Defendant 7SECURE LLC's headquarters is located in this State and a substantial part of the events and/or omissions complained of in this Class Action Complaint occurred in this district.

## PARTIES

13. Plaintiff, for all relevant time periods, was a resident of Burlington County, New Jersey.

14. Corporate Defendant 7SECURE LLC ("Corporate Defendant") is a domestic limited liability company organized under the laws of the State of New York with a headquarters and principal place of business located at 390 Main St. B-173, Islip, New York 11751.

15. Individual Defendant HUKM MYLES MOORE ("Individual Defendant MOORE") is the principal of Corporate Defendant 7SECURE LLC. Individual Defendant MOORE exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. Individual Defendant MOORE exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members at each of the locations serviced by Corporate Defendant 7SECURE LLC. At all times, employees of Corporate Defendant 7SECURE LLC could complain to Individual Defendant MOORE directly regarding any of the terms of their employment, and Individual Defendant MOORE would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedules, compensation, or terminating or hiring such employees. Individual Defendant MOORE exercises functional control over the business and financial operations of Corporate Defendant 7SECURE LLC.

16. At all relevant times, Corporate Defendant 7SECURE LLC was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, NJWPL, NJWHL, TLC, and state wage laws and the regulations thereunder.

17. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

18. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

19. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including, but not limited to security guards, security officers, fire guards, and patrol guards, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

20. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime, due to time-shaving. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

21. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action,

their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS**

22. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including, but not limited to security guards, security officers, fire guards, and patrol guards, among others, employed by Defendants in the six (6) years and 228 days (pursuant to NY's Executive Order tolling during the COVID pandemic), or the relevant statutory period of each jurisdiction's applicable labor law, before the filing of the Complaint (the "Class Members").

23. All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identities of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

24. To the extent necessary, Plaintiff will designate subclasses for each of the states where Defendants have employees.

25. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

26. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same company practices of Defendants, as alleged herein, of (i) failing to pay wages, including overtime, due to time-shaving, and (ii) failing to reimburse uniform maintenance costs.

27. Defendants' company-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

28. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

29. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing

the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30. Defendants and other employers throughout the country violate state wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of the FLSA and the RSWHL;

b) What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members;

c) At what common rate, or rates subject to common methods of calculation, was and is Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and Class Members of their hourly rate and overtime rate;

e) Whether Defendants properly compensated Plaintiff and Class Members for their hourly rate and overtime rate;

f) Whether Defendants paid Plaintiff and Class Members for the actual hours that they worked;

g) Whether Defendants provided Plaintiff and Class Members uninterrupted meal breaks; and

h) Whether Defendants reimbursed Plaintiff and Class Members for uniform maintenance costs incurred.

## STATEMENT OF FACTS

*Plaintiff's Employment Background:*

32. In or around May 2024, Plaintiff was hired by Defendants to work as an armed security guard. During his employment, he was stationed at Dave & Busters, located at 2120 Atlantic Ave, Suite 912, Atlantic City, NJ 08401. Plaintiff's employment with Defendants ended on or around June 1, 2025, when he was terminated in retaliation for making a lawful complaint regarding Defendants' underpayment of wages.

33. Throughout Plaintiff's employment with Defendants, Plaintiff worked a schedule which frequently fluctuated between part time and full time. However, Plaintiff was required to work beyond his scheduled hours. Plaintiff would work his scheduled shift and additional hours which went uncompensated.

34. From the start of Plaintiff's employment with Defendants in or around May 2024 through in or around December 2024, Plaintiff was scheduled to work four (4) days per week. On Thursdays and Sundays, he was scheduled to work from 5:00 p.m. to around 12:30 a.m., for a total of seven and one-half (7.5) hours per shift. On Fridays and Saturdays, Plaintiff was scheduled to work from 6:00 p.m. to around 2:00 a.m., for a total of eight (8) hours per shift. In total, during this period, Plaintiff was scheduled to work thirty-one (31) hours per week.

35. From in or around January 2025 through the end of Plaintiff's employment on or around June 1, 2025, Plaintiff's schedule was reduced to one (1) day per week, on Fridays from 6:00 p.m. to around 2:00 a.m., for a total of eight (8) hours per shift and eight (8) hours per week.

36. At all relevant times, Plaintiff worked his scheduled hours and hours in addition to his schedule, which went uncompensated. FLSA Collective Plaintiffs and Class Members were provided similar schedules and worked hours beyond their schedules, which went uncompensated.

37. Throughout his employment, Plaintiff frequently worked "double shifts." When Plaintiff worked these double shifts, he would work over forty (40) hours per week. For example, the week of September 12, 2024, Plaintiff worked multiple "double shifts" and, in total, worked 50.91 hours that week. *See* **Exhibit A**, Plaintiff's Pay Stubs. This is just one example. FLSA Collective Plaintiffs and Class Members also worked schedules over forty (40) hours per week.

38. At all times, Plaintiff, FLSA Collective Plaintiffs and Class Members worked hours in excess of their scheduled hours for which they were not compensated.

39. Throughout his employment, Plaintiff was paid a base wage rate of $24.00 an hour. FLSA Collective Plaintiffs and Class Members were compensated at similar rates throughout their employment.

40.

*Plaintiff's, FLSA Collective Plaintiffs', and Class Members' Wage Claims:*

41. Although Plaintiff was assigned to work at only one location, Dave & Buster's Atlantic City, Defendants service ten (10) out of the thirteen (13) Dave & Buster's in New York and all five (5) of the Dave & Buster's in New Jersey. Defendants also provide security services to non-Dave & Buster's locations.

42. At all relevant times, Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members at all locations serviced their proper wages for all hours they worked, due to Defendants' time-shaving, in violation of the FLSA and the RSWHL.

43. During his employment, Plaintiff was entitled to a thirty (30) minute unpaid meal break. However, managers employed and supervised by Defendants regularly required Plaintiff to work through his break. Nonetheless, thirty (30) minutes would be automatically deducted from his total hours each workday. FLSA Collective Plaintiffs and Class Members were similarly required to work through or during their meal breaks but were not paid for this time due to Defendants' time-shaving.

44. In addition, on the occasions when Plaintiff was permitted to take a meal break, his break time was not free and clear of work duties. Defendants expressly instructed Plaintiff and other employees that they were required to remain aware of activity at the site location at all times, including during meal breaks, and to keep their work radios on at all times so that they could respond to any incident or emergency during their breaks. As a result, Plaintiff's purported meal breaks did not relieve him of his work responsibilities and constituted compensable working time. FLSA Collective Plaintiffs and Class Members were subject to the same policies and similarly were not relieved of duty during their meal breaks.

45. Defendants required that employees appear fifteen (15) minutes before their scheduled shifts but failed to compensate employees for this pre-shift time. Plaintiff, FLSA Collective Plaintiffs, and Class Members followed Defendants' direction and would appear early for shifts and immediately commence work but would not be compensated for this pre-shift work.

46. Due to this failure to compensate Plaintiff and other employees for pre-shift work, Plaintiff, FLSA Collective Plaintiffs, and Class Members were undercompensated by fifteen (15) minutes for every shift worked.

47. Defendants have further enforced their practice of not compensating employees for pre-shift work by expressly instructing Plaintiff and other employees that they “MUST check in at the time of shift and NOT earlier.” Defendants have further communicated that any sign-in time before the scheduled shift start time will be automatically “adjusted to” the scheduled shift start time “as the contractual time of the shift.” Through these instructions and Defendants’ corresponding payroll adjustment policy, Defendants have affirmatively confirmed that they do not pay Plaintiff, FLSA Collective Plaintiffs, or Class Members for any work performed before the scheduled start of their shifts, including the fifteen (15) minutes of pre-shift work that Defendants require.

48. Further, Defendants would also withhold wages for all hours worked outside Defendants’ clients’ business hours. For example, where Plaintiff worked, Dave & Buster’s Atlantic City, the business closed at 12:00 a.m. Sunday through Thursday. Defendants, through Defendants’ manager, enforced a policy of requiring Plaintiff and other employees to clock out at 12:00 a.m., the time that the business closed, even when the employees’ shift ended at 12:30 a.m. Plaintiff worked thirty (30) minutes past closing, but Defendants failed to compensate for this time. Similarly, FLSA Collective Plaintiffs, and Class Members were undercompensated for each shift worked, because Defendants reduced their hours to reflect their clients’ business hours.

49. Due to this policy, Plaintiff, FLSA Collective Plaintiffs, and Class Members were undercompensated by thirty (30) minutes each shift they worked past Defendants’ clients’ business hours.

50. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours they worked, due to Defendants' policy of time-shaving, in violation of the FLSA and the RSWHL.

51. Plaintiff and Class Members were required to wear uniforms, which must be dry-cleaned and ironed to work for Defendants. Defendants did not launder or maintain their required uniforms. Plaintiff was required to dry clean and iron his uniforms weekly at his own expense. Defendants did not reimburse Plaintiff for his uniform maintenance costs. Class Members were similarly required to pay for uniform maintenance costs on a weekly basis. At all times, Defendants failed to reimburse Plaintiff and Class Members for their uniform maintenance costs in violation of RSWHL.

52. Specifically, the uniform required by Defendants consisted of an all-black suit and all-black footwear. Defendants did not provide the suits or footwear to Plaintiff or to Class Members, and Defendants did not reimburse Plaintiff or Class Members for the cost of acquiring those required uniform items. Because Defendants required Plaintiff and Class Members to wear a clean, properly maintained uniform for every shift, and because the uniform consisted of suits that required dry cleaning and ironing rather than ordinary laundering, a single suit was not sufficient to permit Plaintiff or Class Members to comply with Defendants' uniform requirements while another suit was being dry cleaned and ironed. As a result, Plaintiff and Class Members were each required to purchase—and did purchase—multiple all-black suits and multiple pairs of all-black footwear at their own expense in order to maintain a sufficient supply of clean uniforms across their work schedules. The required uniform was not "wash and wear" clothing, and

Defendants did not supply uniforms or any uniform items to Plaintiff or Class Members at all, much less in adequate quantities.

53. Plaintiff and Class Members incurred costs of more than $50.00 per month due to the maintenance of dry-cleaning their uniforms once a week.

54. Plaintiff and Class Members each incurred substantial out-of-pocket costs in connection with purchasing the multiple all-black suits and multiple pairs of all-black footwear required by Defendants' uniform policy. At all times, Defendants failed to reimburse Plaintiff and Class Members for these uniform purchase costs in violation of the RSWHL.

*Plaintiff's and Class Members' Wage Theft Prevention Act Claims:*

55. At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Prevention Act ("WTPA")—incorporated into the NYLL—including, but not limited to, NYLL §§ 195(1), 195(3) and the RSWHL.

56. At all relevant times, Defendants failed to provide Plaintiff and Class Members with the wage notices required at the time of hire and annually thereafter, including but not limited to wage notices reflecting Plaintiff's actual rates of pay, allowances claimed by Defendants (including any tip credit, meal credit, or uniform allowance), the regular pay day, and other information required under NYLL § 195(1).

57. Under the New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.1 et seq., including § 34:11-4.6, and its implementing regulations, every employer is required to furnish each employee with a statement of wages for each pay period, setting forth the employee's gross wages, deductions, net wages, and the hours worked during the pay period. Defendants, as employers within the meaning of the statute, were obligated to provide Plaintiff with compliant wage

statements throughout the period of Plaintiff's employment. Notwithstanding this obligation, Defendants failed to furnish Plaintiff with wage statements as required by law. Plaintiff was employed by Defendants in the State of New Jersey and, as an aggrieved employee, is entitled to seek appropriate relief—including injunctive relief—to compel Defendants' compliance with the statute, together with such other and further relief as the Court deems just and appropriate under the circumstances.

58. At all relevant times, Defendants’ wage statements (to the extent any were provided) failed to accurately reflect among other issues the actual hours worked by Plaintiff and Class Members (including hours worked during purported meal breaks); and the uniform maintenance allowance owed.

59. By failing to report all of Plaintiff’s and Class Members’ hours, Defendants were able to reduce the employee earnings, and Defendants’ contribution to those earnings, that it later reported to the IRS through the employees’ W-2 forms, as such information is derived from the information on employees’ wage statements. The effect of reporting reduced wages on an employee’s W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee’s entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

60. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300,

303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

61. New York courts continue to find sufficient standing to support these claims. As one such court stated at summary judgment in *Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026):

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that 'Defendants' violations impaired their ability to seek relief due to a lack of information.' More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in Guthrie. Therefore, the Court finds for Plaintiffs on this issue." (internal citations omitted).

62. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez*. By failing to inform Plaintiff and Class Members of the actual hours that they worked, the actual rates that they were paid, and uniform allowances owed to them, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements and notices to Plaintiff and Class Members, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked and the allowances actually owed, or (b) forthrightly acknowledge, by way of the wage statement, that the employees' wages did not correspond to the hours they actually worked or the allowances they were owed.

63. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of the RSWHL.

64. Defendants knowingly and willfully operated their business with a policy of not properly compensating either the FLSA overtime rate (of time and one-half) or the overtime rates (of time and one-half) from the RSWHL to Plaintiff, FLSA Collective Plaintiffs, and Class Members due to Defendants' policy of time-shaving.

65. Defendants knowingly and willfully subjected Plaintiff, FLSA Collective Plaintiffs, and Class Members to time-shaving of hours worked in violation of the FLSA and the RSWHL.

*Plaintiff's Individual Claim for Retaliation Under FLSA, NYLL, and NJWPL:*

66. In January 2025, Plaintiff complained to Defendants' human resources department about his supervisor's lack of response to Plaintiff's complaints regarding his missing hours from his paychecks. After making this complaint, and in retaliation for his complaints, Plaintiff's schedule was reduced from 4 days per week to 1 day per week.

67. On or around June 1, 2025, Defendants terminated Plaintiff after he spoke with Defendants' human resources department to restore his prior schedule. Plaintiff was unjustly retaliated against for lawfully raising a complaint with Defendants' human resources department.

68. Defendants violated anti-retaliation laws of the FLSA, NYLL, and NJWPL for terminating Plaintiff for making a lawful complaint.

69. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

70. Plaintiff repeats each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

71. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

72. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

73. At all relevant times, Corporate Defendant 7SECURE LLC had gross annual revenues in excess of $500,000.00.

74. At all relevant times, Defendants had a policy and practice of failing to pay wages, including overtime, to Plaintiff and FLSA Collective Plaintiffs for all overtime hours worked due to time-shaving in violation of the FLSA.

75. Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this Complaint to set forth the precise amount due.

76. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all

overtime hours, when Defendants knew or should have known such was due to Defendants' policy of time-shaving.

77. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

78. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

79. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time-shaving; plus an equal amount as liquidated damages.

80. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

81. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

82. At all relevant times, Plaintiff and New York Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

83. Defendants failed to properly notify employees of their overtime rate, in direct violation of the NYLL.

84. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and New York Class Members with proper wage notices, at date of hiring, and annually thereafter, as required under the NYLL.

85. Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under the NYLL.

86. At all relevant times, Defendants had a policy and practice of failing to reimburse Plaintiff and New York Class Members for uniform maintenance costs, in violation of the NYLL.

87. At all relevant times, Defendants had a policy and practice of failing to reimburse Plaintiff and New York Class Members for the cost of purchasing required uniforms, in violation of the NYLL.

88. Due to the Defendants' NYLL violations, Plaintiff and New York Class Members are entitled to recover from Defendants unpaid overtime premiums; unpaid wages, including overtime, due to time-shaving; unreimbursed uniform maintenance costs; unreimbursed uniform purchase costs; liquidated damages; reasonable attorneys' fees; and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## VIOLATION OF THE NEW JERSEY WAGE PAYMENT LAW AND THE NEW JERSEY WAGE AND HOUR LAW

89. Plaintiff repeats each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

90. At all relevant times, Plaintiff and New Jersey Class Members were employed by Defendants within the meaning of the NJWPL, §34:11-4.1.

91. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and New Jersey Class Members all wages, including overtime, due to time-shaving, in violation

of the NJWHL.

92. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and New Jersey Class Members with proper wage notices, at date of hiring and annually thereafter, as required under the NJWPL.

93. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under the NJWPL.

94. At all relevant times, Defendants had a policy and practice of failing to reimburse Plaintiff and New Jersey Class Members for uniform maintenance costs, in violation of the NJWHL, including §12:56-17.1.

95. At all relevant times, Defendants had a policy and practice of failing to reimburse Plaintiff and New Jersey Class Members for the cost of purchasing required uniforms, in violation of the NJWHL.

96. Due to the Defendants' NJWPL and NJWHL violations, Plaintiff and New Jersey Class Members are entitled to recover from Defendants unpaid overtime premiums; unpaid wages, including overtime, due to time-shaving; unreimbursed uniform maintenance costs; unreimbursed uniform purchase costs; liquidated damages; reasonable attorneys' fees; and costs and disbursements of the action, pursuant to the NJWPL and NJWHL.

**COUNT IV**

**VIOLATION OF THE TEXAS LABOR CODE**

97. Plaintiff realleges and incorporates all the above allegations in this Complaint as fully set forth herein.

98. At all relevant times, Plaintiff and Texas Class Members were employed by Defendants within the meaning of the TLC, § 401.012.

99. The state of Texas follows the federal labor laws and has not adopted any of their own as some other states have done. According to Texas overtime laws, employers are required to pay their employees overtime pay for hours worked over forty (40) hours a week.

100. Texas overtime laws require that overtime pay should be no less than one and one-half times the employee's regular rate of pay. The only employees that should not receive overtime pay are those that are exempt.

101. Tex. Lab Code § 62.003 provides:

> "(a) At the end of each pay period, an employer shall give each employee a written earnings statement covering the pay period, (b) An earning statement must be signed by the employer or the employer's agent and must show: (1) the name of the employee; (2) the rate of pay; (3) the total amount of pay earned by the employee during the pay period; (4) any deduction made from the employee's pay and the purpose of the deduction; (5) the amount of pay after all deductions are made; and (6) the total number of: (A) hours worked by the employee if the employee's pay is computed by the hour; or (B) units produced by the employee during the pay period if the employee's pay is computed on a piece rate, (c) An earning statement may be in any form determined by the employer. The information required by Subsection (b) may be stated on a check voucher or bank draft given to an employee for the employee's wages."

Tex. Lab Code § 62.003

102. Defendants knowingly and willfully failed to provide proper earnings statements, as required under the TLC.

103. Due to the Defendants' TLC violations, Plaintiff and Texas Class Members are entitled to recover from Defendants unpaid wages, including overtime, due to time-shaving;

liquidated damages; statutory penalties; reasonable attorneys' fees and costs and disbursements of the action, pursuant to the TLC.

**COUNT V**

**VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS**
**(brought on behalf of a Rule 23 Class)**

104. Plaintiff realleges and incorporates the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

105. At all relevant times, Class Members were employed by Defendants within the meaning of the RSWHL, just as Plaintiff was employed by Defendants under the meaning of the FLSA.

106. Plaintiff can represent the Class because the requirements of the FLSA and the requirements of the RSWHL enumerated earlier are identical for purposes of their overtime class claims.

107. Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them for all hours worked, including the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due to a policy of underreporting employees' hours, in violation of the RSWHL outlined above.

108. Defendants knowingly and willfully failed to provide proper wage statements and notices to Class members, as required under the laws of New York, New Jersey, and Texas.

109. Due to Defendants' RSWHL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid compensation for all hours worked, unpaid overtime premiums, unreimbursed uniform maintenance costs, unreimbursed uniform purchase costs, liquidated damages, and reasonable attorneys' fees and costs and disbursements of the action.

110. In addition to violations of RSWHL overtime laws under which Plaintiff brings class (not individual) claims, Defendants violated RSWHL provisions requiring employers to pay employees all wages owed. Since overtime wages are owed under the FLSA, these laws encompass Class Members' claims.

111. Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims. Any state restrictions on class actions are irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil Procedure hold. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions.); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions.").

**COUNT VI**

**RETALIATION UNDER THE FAIR LABOR STANDARDS ACT**

112. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

113. At all relevant times, Plaintiff was an employee of Defendants within the meaning of the FLSA, and was a person covered by and intended to benefit from the provisions of the FLSA.

114. Section 15(a)(3) of the FLSA provides that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has

filed any complaint […] under or related to this Act."

115. As alleged herein, Plaintiff complained to Defendants' human resources department regarding missing hours from his paychecks. In response to such complaints, Defendants terminated Plaintiff under pretextual reasons in violation of Section 15(a)(3).

116. Defendants' retaliatory termination was in willful disregard of the provisions of the FLSA.

117. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff suffered damages in the form of back pay from lost earnings, compensatory damages, and punitive damages. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees and costs, as provided under the FLSA.

**COUNT VII**

**RETALIATION UNDER NEW JERSEY WAGE PAYMENT LAW**

118. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

119. At all relevant times, Plaintiff was an employee of Defendants within the meaning of the NJWPL and was a person covered by and intended to benefit from the provisions of the NJWPL.

120. Defendants willfully violated the NJWPL by retaliating against Plaintiff by discharging him shortly after he raised concerns about Defendants' unlawful policies regarding unpaid wages.

121. In response to such complaints, Defendants terminated Plaintiff in violation of Section 34:11.

122. Defendants' actions constitute a violation of Section 34:11 of the NJWPL. An employee can "recover in a civil action the full amount of any wages due, or any wages lost because of any retaliatory action taken in violation of N.J.S.A. 34:11-4.10(a) . . . plus an amount of liquidated damages equal to not more than 200 percent of the wages lost or of the wages due, together with costs and reasonable attorneys' fees." *Maia v. IEW Const. Grp.*, 257 N.J. 330, 344–45, 313 A.3d 887, 895–96 (2024).

123. Defendants' conduct was in willful disregard of the provisions of the NJWPL.

124. As a direct and proximate result of Defendants' willful disregard of the NJWPL, Plaintiff suffered damages in the form of back pay from lost earnings, compensatory damages, and punitive damages. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees and costs, as provided for under the NJWPL.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the RSWHL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to time-shaving, pursuant to the FLSA and the RSWHL;

d. An award of unreimbursed uniform maintenance costs, due under the FLSA and the RSWHL;

e. An award of unreimbursed uniform purchase costs, due under the FLSA and the RSWHL;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages, including overtime compensation, pursuant to the FLSA and the RSWHL;

g. An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements;

h. An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i. An award of all owed benefits owed pursuant to the RSWHL;

j. An award of all applicable damages due to Defendants' retaliatory conduct pursuant to the FLSA, NYLL, and NJWPL;

k. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l. Designation of this action as a class action pursuant to F.R.C.P. 23;

m. Designation of Plaintiff as Representative of the Class; and

n. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: May 27, 2026

Respectfully submitted,

By: <u>*/s/ C.K. Lee*</u>

C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*